**VIA CM/ECF**　　　　　　　　　　　　　　　　　　　　　　　　　　　　July 5, 2024

The Honorable Rodney Gilstrap
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670

Re:　*Iarnach Technologies Ltd. v. Charter Communications, Inc. et al.*, No. 2:24-cv-230-JRG

Dear Judge Gilstrap:

　　　Plaintiff Iarnach Technologies Ltd. ("Iarnach") and Defendants Charter Communications, Inc., Charter Communications Holding Company, LLC, Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, and Spectrum Gulf Coast, LLC (collectively, "Defendants") submit this joint letter pursuant to the Court's Standing Order Regarding Motions Under 35 U.S.C. §101.

**Plaintiff's Position: Claim Construction Is Necessary to Inform The § 101 Analysis**

"[A] definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the rule." *Phx. Licensing, L.L.C. v. CenturyLink, Inc.*, No. 2:14-CV-965-JRG-RSP, 2015 U.S. Dist. LEXIS 134038, at *9 (E.D. Tex. Aug. 14, 2015); *Zilkr Cloud Techs., LLC v. Cisco Sys., Inc.*, No. 2:22-CV-00166-JRG-RSP, 2023 U.S. Dist. LEXIS 113454, at *4-5 (E.D. Tex. June 11, 2023). This is because "[d]etermining the claims' scope—and thus whether they are directed at patent-ineligible subject matter—often requires claim construction." *R2 Sols. LLC v. Am. Airlines, Inc.*, No. 4:22-cv-00353, 2022 U.S. Dist. LEXIS 219782, at *3-4 (E.D. Tex. Dec. 6, 2022) (referencing *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1129 (Fed. Cir. 2018)). Further "the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Id.* (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012)).

This case involves passive optical networks ("PON"), and in particular, PON networks that comply with version 2.0 of the Data Over Cable Service Interface Specification of Ethernet Passive Optical Network ("DPoE"). This is relevant because Charter's motion removes any notion of optical networks when defining the purported "abstract ideas." For example, Charter freely admits that its '035 Patent analysis starts by "strip[ing]" the claims of their "optical network components." *See* Dkt. 31 at 17.

These DPoE v2.0 networks are different from conventional networks in many ways. For example, DPoE v2.0 networks use specialized hardware for transmitting and receiving optical pulses of light via fiber optic cable, oftentimes referred to as an Optical Line Terminal ("OLT") and an Optical Network Terminal ("ONU"). Further, the "OLT" is part of a "DPoE System" that also includes a Virtual Cable Modem ("vCM"). The "DPoE System" communicates with a "back-office management system" to configure and dynamically reconfigure the OLTs and ONUs. *See* '035 claim 14 and '982 claim 1. And once properly configured, the OLTs can securely transmit "multicast service data" to multiple ONUs at the same time using "common keys" that are separately sent via a "management control channel." *See* '378 claim 1. Figure 1 of the '982 Patent generally illustrates this DPoE v2.0 network architecture:



FIG. 1

As is readily apparent from the above, this is a complex case rooted in specific DPoE v2.0 technology. The claims specifically recite terms like "OLT," "ONU," "DPoE System," "vCM" and "back-office management system," and explain how they are used to improve the functioning of the DPoE v2.0 networks. *E.g.*, '035 claim 14, '982 claim 1, '378 claim 1. Yet Charter improperly abstracts the claims to nothing more than "distributing software updates over a network" ('035 and '982 Patents) and "creating, using, and sending a standard encryption key and data over a network" ('378 Patent). Charter has abstracted out any notion of the DPoE networks or their components. But the claims cannot be evaluated in a vacuum. *See Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1356 (Fed. Cir. 2011) ("The customary meaning of a claim term is not defined in a vacuum and should be harmonized, to the extent possible, with the intrinsic record, as understood within the technological field of the invention."). Claim construction of the aforementioned DPoE specific terms will show the claims are inextricably tied to DPoE networks and how the claims improve their functionality. *See R2 Sols.*, 2022 U.S. Dist. LEXIS 219782, at *3-4.

Also, some of the claims recite terms like "means for generating," "means for notifying," "means for providing," and "means for monitoring." *E.g.*, '035 claims 13 and 32. The use of the word "means" creates a presumption that § 112, ¶6 applies. *Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 703 (Fed. Cir. 1998). And when §112, ¶6 applies, the claims must be construed and limited to only the structures described in the specification and equivalents thereof. *Advanced Ground Info. Sys. v. Life360, Inc.*, 830 F.3d 1341, 1345-46 (Fed. Cir. 2016). How can the Court determine what such claims are "directed to" as part of *Alice* step 1 without first understanding what structures those claims cover? The simple answer is: it cannot. That is why "it is generally wiser—and more efficient—to wait to determine a patent's § 101 eligibility until after issuing [a] claim construction order." *Slyce Acquisition v. Syte - Visual Conception*, No. W-19-CV-00257-ADA, 2020 U.S. Dist. LEXIS 9451, at *16 (W.D. Tex. Jan. 10, 2020).

Finally, as part of *Alice* step 2, the Court must determine whether the claims recite something more than "well-understood, routine, and conventional" activities and components. This necessarily involves determining the knowledge of one of ordinary skill in the art. For that reason, this Court has delayed ruling on a §101 motion until conducting "further inquiry into issues such as the knowledge of one of ordinary skill in the art as to the disputed terms[, which] may be resolved at claim construction." *Greatgigz Sols., LLC v. E. Tex. Border Health Clinic*, No. 2:21-CV-00370-JRG, 2022 U.S. Dist. LEXIS 114212, at *4-5 (E.D. Tex. June 28, 2022).

Defendants allege the patents claim only the "basic functions" of "conventional" optical network components. Not true. The claims recite novel functionality not present in prior optical networks. Regardless, "the Court cannot simply assume Defendants' characterization of the claims and implicit positions on the meaning of claim terms are correct without a meaningful ability to examine fully what a person of ordinary skill in the art would interpret those terms to mean. Simply put, a proper analysis under *Mayo* would be premature and improper." *Phx. Licensing*, 2015 U.S. Dist. LEXIS 134038, at *9.

**Defendants' Position: Claim Construction Is Not Necessary to Inform the Court's Analysis as to Patentability, Nor Does Iarnach Explain with Any Particularity How a Construction of Any Term May Impact the Court's Patent Eligibility Analysis.**

The Court's Standing Order Regarding Motions Under 35 U.S.C. § 101 requires Iarnach, as a respondent, to identify "in particular, any claims that [it] believes need to be construed, why such is needed, and what intrinsic references support such position." Iarnach identifies optical network components—"OLT," "ONU," "DPoE System," "vCM," and "back-office management system," but does not explain why these terms need construction, how they should be construed, or why their constructions may impact the Court's decision on Defendants motion to dismiss under § 101. (Dkt. 31). These terms are well-known components of passive optical networks and are used in the patents according to their plain and ordinary meanings. None of the components are new or conceived by the inventors of the asserted patents. Neither is the DPoE system. Indeed, the specifications describe the DPoE system and each of its conventional components as prior art in the Background section, including Figure 1 of the 982 patent upon which Iarnach relies. (*See e.g.*, 982 patent at 1:17-32 (describing a DPoE system and the DPoE system components shown in Figure 1 as prior art); 378 patent at 1:14-47 (describing ONU, OLT, and encryption in prior art passive optical networks).) Merely identifying well-known and conventional terms and proclaiming that they need constructions does not comply with the Court's Order and does not create a dispute that prevents the Court from ruling on Defendants' motion. "Were the Court to accept [Plaintiff's] conclusory arguments, the Court would endorse a rule that a § 101 motion can only precede claim construction with a patentee's blessing. But there is no such rule." *Uniloc USA, Inc. v. E-MDS, Inc.*, No. 6:14-cv-00625-RWS, 2015 WL 10791906, *3 (E.D. Tex. Aug. 19, 2015).

Besides identifying the well-known optical network components, Iarnach also identifies means-plus-function limitations that appear only in two claims of the 035 patent. But these limitations do not change the § 101 analysis either. As an initial mater, in its complaint, Iarnach identified claim 14, a non-means-plus-function claim of the 035 patent, as "representative" of all other claims. (Dkt. 24, First Amended Complaint, ¶ 72.) And the means-plus-function claims, as the representative claim 14, recite only basic functions of generating a file, notifying a device, providing a file over the network, and monitoring the success of an update. Tellingly, Iarnach fails to cite any intrinsic support for the alleged structures that would limit these functions in a way to escape a patent eligibility analysis at this stage in this case, or otherwise explain how these routine functions depart from their plain and ordinary meaning in a passive optical network. Nor could it, as the intrinsic record shows that the Examiner identified multiple prior art references that adequately disclosed such means *without* the need for construction. (*See, e.g.*, 982 patent prosecution history at 1/2/2005 Office Action at 6-7 (citing by U.S. Patent Application Publication No. 2011/0131624 A1 to Wu for means plus function limitations); 9/9/2015 Office Action at 5-6 (citing Wu reference and U.S. Patent Application Publication No. 2011/0072119 A1 to Bronstein et al. for same); 3/2/2016 Office Action at 4-6 (citing Bronstein reference for same); 11/2/2016 Office Action at 4-6 (same).) Indeed, the specification describes those structures broadly as any combination of "computer software, firmware, or hardware," and "encompasses all apparatus devices[] and machines" without practical limit. (035 patent at 8:20-46.)

Finally, while Iarnach alleges that the Court must understand the level of ordinary skill of the art to determine whether the claims recite "well-understood, routine, and conventional"

components, Iarnach is silent as to how that would impact the Court's § 101 analysis. Indeed, regardless of the level of skill in the art, the conventional components of a passive optical network remain well-understood and conventional as the specifications of the asserted patents confirm.

   Accordingly, because Iarnach did not, and cannot, show that claim construction of any term would impact the Court's eligibility analysis, the Court should resolve the § 101 issue without further delay especially because "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). Indeed, where, as here, the patentee fails to identify any factual dispute, the threshold issue of patent eligibility under 35 U.S.C. § 101 may be resolved under Rule 12(b)(6) before formal claim construction. *Semantic Search Techs. LLC v. Aldo U.S., Inc.*, 425 F. Supp. 3d 758, 759 (E.D. Tex. 2019); *see also, Network Architecture Innovations, LLC v. CC Network Inc.*, No. 2:16-cv-00914-JRG, 2017 WL 1398276, at *4 (E.D. Tex. Apr. 18, 2017) (Gilstrap, J) (analyzing patent eligibility before claim construction when plaintiff "fail[s] to explain how claim construction might alter the § 101 analysis"); *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023) (holding the district court did not err in resolving the motion to dismiss without first undertaking claim construction because patentee "failed to explain why any proposed constructions were not frivolous or how its constructions would make any difference to the *Alice* analysis."). Defendants respectfully request the Court to do so.

              Respectfully submitted,

              */s/ Eric J. Enger*
              HEIM PAYNE & CHORUSH LLP
              609 Main Street, Suite 3200
              Houston, Texas 77002
              Telephone: (713) 221-2000
              Facsimile: (713) 221-2021

              **Counsel for Plaintiff Iarnach Technologies Ltd.**

              */s/ Saina S. Shamilov* (by permission)
              Saina S. Shamilov
              CA Bar No. 215636
              sshamilov@fenwick.com
              FENWICK & WEST LLP
              801 California Street
              Mountain View, CA 94041
              Telephone: (650) 988-8500

              **Counsel for Defendants Charter Communications, Inc., Charter Communications Holding Company, LLC, Charter Communications Operating, LLC, Spectrum Management Holding Company, LLC, and Spectrum Gulf Coast, LLC**