# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| IARNACH TECHNOLOGIES LTD., | § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:24-CV-00230-JRG |
| CHARTER COMMUNICATIONS INC., *et al.*, | § § § | |
| *Defendants*. | § § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Iarnach Technologies Ltd.'s ("Plaintiff" or "Iarnach") Motion to Compel Venue Discovery (the "Motion"). (Dkt. No. 73.) In the Motion, Plaintiff requests the Court to order Charter Communications, Inc.; Charter Communications Holding Company, LLC; Charter Communications Operating, LLC; Spectrum Management Holding Company, LLC; and Spectrum Gulf Coast, LLC (collectively, "Defendants" or "Charter" and with Plaintiff, the "Parties") to produce certain venue discovery. (*Id.* at 1.) Having considered the Motion, and for the following reasons, the Court finds that the Motion should be **GRANTED-IN-PART and DENIED-IN-PART**.

## I. INTRODUCTION

Plaintiff accuses Defendants of infringing U.S. Patent Nos. 8,942,378; 9,674,035; and 9,287,982 (collectively, the "Asserted Patents"), each of which is generally directed to passive optical networks. (Dkt. No. 43 (Second Amended Complaint for Patent Infringement) ¶¶ 12, 47–112.) Specifically, Plaintiff alleges that Defendants' optical equipment infringes the Asserted Patents by implementing Data Over Cable Service Interface Specification Provisioning of Ethernet Passive Optical Network version 2.0 ("DPoE v2.0") networks and network services. (*Id.* ¶¶ 55, 75, 99.) "The infringing activities include, but are not limited to, the manufacture, use, sale,

importation, and/or offer for sale of products and/or services by Charter for operation on its DPoE v2.0 networks and network services." (*Id.*)

Shortly after Plaintiff filed its Second Amended Complaint, the Parties requested, and the Court granted, venue discovery. (Dkt. Nos. 45, 46.) The Court granted venue discovery because Defendants filed a Motion to Transfer Under 28 U.S.C. § 1404(a), in which Defendants argue that this case should be heard in the District of Colorado. (Dkt. No. 31.)

On October 10, 2024, the Court issued an Order extending venue discovery up to and including October 31, 2024. (Dkt. No. 70 at 1.) Consequently, the Court also extended (1) Plaintiff's deadline to respond to Defendants' Motion to Transfer Under 28 U.S.C. § 1404(a) to November 14, 2024, and (2) Defendants' deadline to file a reply brief to November 28, 2024. (*Id.*)

## II. LEGAL STANDARD

The rules of discovery "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Rule 37 allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). "The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, No. 4:20-cv-00042, 2020 WL 6559869, at *2 (E.D. Tex. Nov. 9, 2020) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show specifically why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

### III. ANALYSIS

In the Motion, Plaintiff requests the Court to order Defendants to produce several categories of information that they have "already agreed to provide." (Dkt. No. 73 at 1.) The Court will address each category separately.

#### A. Employees in Texas and Missouri

First, Plaintiff argues that Defendants "should be ordered to identify each employee in Texas and Missouri who is likely to have relevant knowledge, either because they work on one of the teams Charter itself says are relevant or because they have job duties related to the Accused Instrumentality." (Dkt. No. 73 at 2.) Plaintiff argues that Defendants have "an affirmative duty to candidly investigate its employees in Texas and turn over the results of that investigation in discovery," and Plaintiff further argues that Defendants must disclose relevant employees in Missouri because Defendants' declarant stated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*Id*. at 2–3.) Plaintiff also contends that it has found previously undisclosed and relevant technical witnesses located in Texas and Missouri based on LinkedIn profiles, contrary to Defendants' declarant, who stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id*. at 3–4.) Plaintiff further argues that "Charter refuses to identify its relevant non-technical employees in Texas and Missouri" because, for example, while Charter's declarant stated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Defendants have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. at 4–5.)

In response, Defendants argue that they have fulfilled their discovery obligations. (Dkt. No. 77 at 2.) Regarding technical employees, Defendants state that they have "identified every team with knowledge of the design, development, testing, selection, configuration, and operation of the Accused Instrumentalities." (*Id*.) Defendants argue that the 29 employees Plaintiff

3

previously identified as "purportedly knowledgeable about the Accused Instrumentalities based on only their LinkedIn profiles" did not know about or were involved "with the design, development, testing, selection, configuration, or operation of that technology." (*Id.* at 3.) Defendants state that they have confirmed that the individuals specifically named by Plaintiff in the Motion "do not have any involvement with Charter's ONUs and OLTs or their operations." (*Id.*) Defendants further contend that additional employees Plaintiff identified "lack knowledge about the design, development, testing, selection, configuration, or operation of the Accused Instrumentalities," except for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*Id.* at 3–4.) Regarding marketing, financial, and legal employees, Defendants argue that they have "identified each non-technical team with relevant knowledge in its discovery responses, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*Id.* at 4.) Defendants also state that they have investigated the non-technical employees Plaintiff identified in the Motion and confirmed that they do not have knowledge of the Accused Instrumentalities. (*Id.* at 4–5.)

Defendants further state that the Accused Instrumentalities, which relate to DPOE v2.0, are different than most of Defendants' network, which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 1–2.) According to Defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 2.)

4

The Court finds that this portion of the Motion should be **GRANTED**. The dispute primarily concerns the scope of the "Accused Instrumentalities." Plaintiff has defined this term as follows:

> "the functionality necessary for Charter to provide DPoE v2.0 compliant networks to its customers, including all hardware and software, optical line terminals (OLTs), optical network units (ONUs)/optical network terminals (ONTs), transport networks, ***and DOCSIS back office equipment (e.g. the Operation Support System, OSS)***," and "at least the following fiber equipment in its DPoE network: (A) Spectrum ONU (SONU) Modem, 10G EPON DPoE Advanced Fiber Voice Modem; (B) Alcatel-Lucent XE-040G-A ONT, 10G EPON Bridging Optical Network Unit; (C) Commscope C1004, 10G EPON Bridging Optical Network Unit; and (D) Adtran 1004W."

(Dkt. No. 77-1 ¶ 3 (emphasis added).) Defendants do not object to Plaintiff's definition—in fact, Defendants embrace it. (Dkt. No. 77 at 1.) However, the definition of "Accused Instrumentalities" is broader than Defendants admit. Indeed, it encompasses at least some DOCSIS equipment, which undermines Defendants' argument that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* at 2.) Defendants' attempt to ignore this (and other) aspects of the definition of "Accused Instrumentalities" to instead focus on OLTs and ONUs disregards the full scope of the definition of "Accused Instrumentalities" and Plaintiff's discovery requests. Accordingly, the Court finds that Defendants must identify each employee in Texas and Missouri who is likely to have relevant knowledge because they have job duties related to the Accused Instrumentalities.

Additionally, Defendants represent that they have "identified every team with knowledge of the design, development, testing, selection, configuration, and operation of the Accused Instrumentalities" and "identified each non-technical team with relevant knowledge in its discovery responses." (Dkt. No. 77 at 2, 4.) To the extent that Defendants' team identifications are based upon Defendants' narrow interpretation of "Accused Instrumentalities," the Court finds that

5

Defendants must further identify each employee in Texas and Missouri who is likely to have relevant knowledge because they work on a relevant team.

### B. Former Employees in Texas and Missouri

In the Motion, Plaintiff argues that Defendants "should also be ordered to identify each former employee in Texas and Missouri, employed in the past six years, who is likely to have relevant knowledge, either because they worked on one of the teams Charter itself says are relevant or because they had job duties related to the Accused Instrumentality." (Dkt. No. 73 at 5.) Plaintiff identifies two former employees as allegedly relevant and states that Defendants have "refused to provide any discovery whatsoever about former employees." (*Id*. at 5–6.)

In response, Defendants argue that they have investigated potentially relevant former employees, just as they have investigated potentially relevant current employees. (Dkt. No. 77 at 5.) However, Defendants are "not aware of any relevant former employees and has clarified as such in its supplemental interrogatory responses." (*Id*.)

The Court finds that this portion of the Motion should be **GRANTED** for the reasons explained above. Defendants must identify each former employee in Texas and Missouri, employed in the past six years, who is likely to have relevant knowledge, either because they worked on one of the teams Charter itself says are relevant or because they had job duties related to the "Accused Instrumentalities." Defendants must apply the proper scope of "Accused Instrumentalities."

### C. Document Custodians in Texas

In the Motion, Plaintiff argues that Defendants "should be ordered to identify each employee in Texas who can access the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that Charter itself claims are relevant." (Dkt. No. 73 at 6.) Plaintiff contends that Defendants fail to give a straightforward

6

answer regarding how employees on relevant teams in Texas and Missouri [redacted]. (*Id.*)

In response, Defendants state that they have provided who can access "*the information about the Accused Instrumentalities* stored in" the [redacted]. (Dkt. No. 77 at 5.) Defendants argue that they have identified relevant document custodians. (*Id.*) According to Defendants, "[t]o require Charter to identify each and every person who may have access to a [redacted] rather than the information about the Accused Instrumentalities stored there would place a burden greatly unproportional to the needs of this case and inconsistent with any *Volkswagen* factors." (*Id.* at 5–6.)

The Court finds that this portion of the Motion should be **DENIED**. The Court agrees with Defendants that identifying all Texas employees with access to the [redacted] would go beyond the needs of this case. Based upon Defendants' representations, they have already provided information on who can access the information about the Accused Instrumentalities. Under these circumstances, such information is sufficient.

### D. Defendants' Texas Locations

In the Motion, Plaintiff argues that "Charter should be ordered to disclose how many employees work at each of the [redacted] Charter locations in Texas and describe and [sic] the nature and duration of the activities conducted at each location with enough detail so that Iarnach can assess whether those activities are relevant to this lawsuit." (Dkt. No. 73 at 6.) Plaintiff states that while Defendants have provided a list of their Texas locations, they have not stated (1) what work is performed at each location, (2) whether that work relates to the Accused Instrumentalities, and (3) how many employees work at each location. (*Id.* at 6–7.)

In response, Defendants argue that "the number of employees at each of these locations, none of whom have any relevant knowledge, are not part of any *Volkswagen* factors." (Dkt. No.

77 at 6.) Defendants further argue that they (1) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (2) are "not aware of anyone at these locations involved in the design, development, selection, testing, operation or configuration of the Accused Instrumentalities," and (3) are making available a corporate representative that can answer deposition questions on these locations. (*Id*.)[1]

The Court finds that this portion of the Motion should be **GRANTED**. To the extent Defendants only provided descriptions such as ▇▇▇▇▇▇▇▇▇▇▇▇ such is insufficient, despite Defendants' argument that they ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id*.) Defendants must provide specific business functions performed at each of their Texas locations. Additionally, Defendants must provide the number of employees that work at each Texas location. While this request does not go to the heart of one of the *Volkswagen* factors, this information is still relevant to a venue analysis and could lead to other probative discovery. Moreover, while Defendants state that they are "not aware of anyone at these locations involved in the design, development, selection, testing, operation or configuration of the Accused Instrumentalities," Defendants are silent as to non-technical discovery. Accordingly, this discovery should be produced.

E. **Components of the Accused Instrumentality in Texas and Missouri**

In the Motion, Plaintiff argues that Defendants "should be ordered to provide the location and description of each component of the Accused Instrumentality located in Texas or Missouri." (Dkt. No. 73 at 7.) According to Plaintiff, such components "are relevant physical evidence of infringement" and "[c]ourts routinely compel defendants to disclose the locations of their accused instrumentalities." (*Id*.)

---

[1] Defendants also clarify that they have ▇ locations in Texas, not ▇ as Plaintiff states in the Motion. (Dkt. No. 77 at 6.)

8

In response, Defendants argue that "[t]his request is equivalent for a plaintiff seeking the locations of every television set accused of patent infringement in the state." (Dkt. No. 77 at 6–7.) Defendants have ███████████████████████████████████████████████████████████ ████████████████████████████████ and the components are not physical evidence because infringement is dependent upon how the Accused Instrumentalities operate based upon technical documents. (*Id*. at 7.)

The Court finds that this portion of the Motion should be **GRANTED**. Defendants admit that ██████████████████████████████████████████████████████████████ ████████████████████████████. The Court finds that Defendants have again restricted the definition of "Accused Instrumentalities" to focus on ONU and OLT to the exclusion of other relevant types of instrumentalities. Accordingly, Defendants must provide the location and description of each component (*e.g.*, OLTs, ONUs, and DOCSIS equipment) of the Accused Instrumentality located in Texas or Missouri. However, Defendants "need not identify components located on customer premises" (Dkt. No. 73 at 7 n.3), including "the locations of every television set accused of patent infringement in the state." (Dkt. No. 77 at 7.)

### F. Production of Relevant Documents

In the Motion, Plaintiff argues that Defendants "should be ordered to produce documents responsive to the above topics" because they have not provided any documents about (1) their employees, (2) their allegedly relevant teams, and (3) components of the Accused Instrumentalities in Texas or Missouri. (Dkt. No. 73 at 7.)

In response, Defendants argue that the information Plaintiff seeks "is not set forth in documents," but "[t]o the extent documents have existed, [Defendants have] produced them." (Dkt. No. 77 at 7.)

9

The Court finds that this portion of the Motion should be **GRANTED** to the extent that Defendants have been withholding any documents related to the portions of the Motion granted above.

IV. **CONCLUSION**

For the reasons noted above, the Court finds that the Motion should be **GRANTED-IN-PART and DENIED-IN-PART** as set forth herein. Accordingly, it is **ORDERED** that Defendants provide the above-referenced venue discovery. It is further **ORDERED** that Defendants shall produce such discovery within fourteen (14) days of entry of this Order. Venue discovery shall be **extended** and will close twenty-one (21) days from entry of this Order. Plaintiff's response to Defendants' Motion to Transfer, or in the Alternative, Motion to Dismiss (Dkt. No. 31) shall be due within thirty-five (35) days from entry of this Order, and Defendants' reply thereto shall be due within forty-nine (49) days from entry of this Order.

Plaintiff and Defendants are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within seven (7) days hereof.

**So ORDERED and SIGNED this 29th day of October, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE