## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IARNACH TECHNOLOGIES LTD., <br><br> Plaintiff, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, and SPECTRUM GULF COAST, LLC, <br><br> Defendants. | Civil Action No. 2:24-cv-00230-JRG <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF IARNACH TECHNOLOGIES LTD.'S
## MOTION TO COMPEL DOCUMENT PRODUCTION UNDER P. R. 3-4(a)

Iarnach respectfully moves the Court for an order compelling Charter[1] to produce source code, scripts, and any other technical documents sufficient to show Charter's implementation of the Accused Instrumentalities[2]. For about three months, Iarnach has repeatedly asked Charter to produce this information, yet Charter has not done so.  Enough is enough.  This Court should compel Charter to comply with its basic discovery obligations under the Local Rules.

## I.    Factual Background

Charter's Patent Local Rule 3-4(a) production was due on September 5, 2024. ECF No. 55 at 4. Just prior to that deadline, Iarnach sent Charter a letter reminding it to produce "[d]ocuments and information sufficient to show in detail the operation of the Accused Functionality, including but not limited to source code. . . ." Ex. A (E. Enger Aug. 26, 2024 Ltr.). Yet by the September 5th deadline, Charter had only produced 41 documents[3]—none of which included source code, or explained Charter's implementation of the Accused Instrumentalities.  Rather, these documents were written by third-party suppliers and just showed equipment capabilities that Charter could or could not implement.

On September 18, Iarnach again wrote Charter requesting the immediate production of Charter's "source code and/or scripts showing how Charter programs/configures its DPoE

---

[1]  In this Motion, "Charter" refers collectively to Charter Communications, Inc.; Charter Communications Holding Company, LLC; Charter Communications Operating, LLC; Spectrum Management Holding Company, LLC; and Spectrum Gulf Coast, LLC.

[2] The terms "Accused Instrumentality" or "Accused Instrumentalities" have the meaning that the parties have agreed on and the Court endorsed on October 30, 2024. *See* ECF No. 80 at 5. It includes: "the functionality necessary for Charter to provide DPoE v2.0 compliant networks to its customers, including all hardware and software, optical line terminals (OLTs), optical network units (ONUs)/optical network terminals (ONTs), transport networks, and DOCSIS back office equipment (e.g. the Operation Support System, OSS)." *Id.*

[3] Charter had made other productions related to venue discovery.

networks to implement the accused functionality." Ex. B (E. Enger Sept. 18, 2024 Ltr.). Charter

did not respond. Then on October 30, Iarnach wrote again requesting Charter to comply with Patent

Local Rule 3-4(a) and produce documents showing how its Accused Instrumentalities are

implemented. Ex. C (C. Ruiz Oct. 30, 2024 Ltr.). Charter responded stating that "[a]s its

investigation identifies additional documents, Charter will produce them. . . ." Ex. F (C. Larson's

Nov. 7, 2024 Ltr.). Finally, on November 8, the parties met and conferred to discuss this issue. But

Charter refused to commit to a date certain by which it would provide the requested technical

documents. So on November 15, Iarnach again requested a date certain for the document

production. Ex. D (C. Ruiz Nov. 15, 2024 Email). Charter could not commit to a date certain, but

instead noted that it "will take us time to gather that information." Ex. E (C. Larson Nov. 15, 2024

Email).

Recognizing that this motion to compel was forthcoming, Charter recently produced over

19,000 pages of documents on November 20.  However, these documents were nothing more than

reproductions of Charter's public-facing website. To date, Charter still has not produced source

code, scripts, or any other document sufficient to show Charter's implementation of the Accused

Instrumentalities.

Charter's stated excuse for not timely complying with its discovery obligations is that one

of its in-house legal counsel, Mr. Dan Boglioli, has family medical issues.[4] While Iarnach is

sympathetic, Charter is a large company with many, many employees. In a company that size, it

is unreasonable for one person's medical issues to indefinitely stymie technical discovery.

---

[4] Mr. Boglioli explained his family medical issues in detail in a prior declaration.  ECF No. 85.

**II.     This Court Should Compel Charter To Comply With Local Patent Rule 3-4(a).**

Charter should be ordered to comply with Local Patent Rule 3-4(a) by producing source code, scripts, and any other technical documents in its possession, custody, or control, that show Charter's implementation of the Accused Instrumentalities, *i.e.*, how Charter programs or configures its DPoE networks to implement the Accused Instrumentalities.

This Court's local patent rules require:

> [T]he party opposing a claim of patent infringement must produce or make available for inspection and copying: (a) Source code, specifications, schematics, flow charts. . ., or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality. . .

P. R. 3-4(a). Charter cannot reasonably dispute that Local Patent Rule 3-4(a) requires disclosure of source code and other documentation describing Charter's implementation of the Accused Instrumentalities. *Edward D. Ioli Trust v. Avigilon Corp.,* Case No. 2:10-cv-605-JRG, at *4 (E.D. Tex. Nov. 16, 2012) ("This District's P. R. 3-4(a) requires the alleged infringer to produce any and all documents describing the operation of any aspects or elements of an accused instrumentality. P. R. 3-4(a) clearly covers source code, regardless of what additional materials may exist to disclose the functionality of the technology at issue.").  Yet Charter did not timely comply with its Rule 3-4(a) discovery obligations, and despite months of prodding, Charter has refused to provide a date certain by which it will produce that source code and documentation.

For example, on August 26, 2024, before the September 5th deadline, Iarnach requested that Charter produce "Documents and information sufficient to show in detail the operation of the Accused Functionality, but not limited to source code. . . ." Ex. A. After the September 5th deadline, Iarnach wrote again requesting Charter to comply with its P. R. 3-4(a) production. Ex. B. On October 30, 2024, Iarnach wrote again requesting Charter to comply with P. R. 3-4(a). Ex. C.

Charter responded stating that P. R. 3-4(a) "requires only the production of documents 'sufficient to show the operation' of the Accused Instrumentalities." Ex. F. The parties met and conferred on November 8, where Iarnach noted that P. R. 3-4(a) requires disclosure of "source code" and that Charter's production did not show how Charter implements the Accused Instrumentalities. Ex. G (C. Ruiz's Nov. 9, 2024, Email to Charter), at 1. To date, Charter still has not produced any source code, or other documents detailing how Charter actually implements the Accused Instrumentalities.

Charter's document production is long overdue. The deadline to produce these documents was September 5, 2024. ECF No. 55 at 4. Charter does not dispute its document production remains deficient. Charter simply refuses to provide a date certain by which it intends to produce these documents. Instead, Charter states that given the "upcoming holidays and vacations it will take us time to gather that information in detail." Ex. E. But Charter has already had ample time to gather and produce the requested information. Iarnach needs that information now to prosecute its case.

Charter's excuse is unavailing. During the November 8th meet-and-confer, Charter explained that Mr. Boglioli is the "point-person" within Charter designated to gather these documents, and that his personal circumstances impede Charter's ability to comply with its document production obligations. While Iarnach sympathizes with Mr. Boglioli's situation, Charter should find alternative ways to locate these documents. In a company of Charter's size, it is unreasonable for one person to bottleneck the entire technical production. Charter has over 100,000 employees. Ex. H (Charter's website listing 101,100 employees as of 12/31/2023). Charter has identified in venue discovery dozens of employees who are allegedly knowledgeable about Charter's development and implementation of the Accused Instrumentalities. If Charter's characterization of these employees is true, then these employees possess most if not all of the

4

relevant documents and code. Charter should employ all reasonable means to comply with its discovery obligations in this case, including consulting with these employees about locating the source code and other technical documents.

## III.    Conclusion

Iarnach respectfully requests that the Court compel Charter to comply with Local P. R. 3-4(a) by producing source code, scripts, and any other technical documents that shows how Charter implements the Accused Instrumentalities.

Dated:  November 22, 2024                         Respectfully submitted,

                                                  /s/ Carlos I. Ruiz
                                                  Demetrios Anaipakos
                                                  Texas Bar No. 00793258
                                                  danaipakos@aatriallaw.com
                                                  Amir H. Alavi
                                                  Texas Bar No. 00793239
                                                  aalavi@aatriallaw.com
                                                  Michael McBride
                                                  Texas Bar No. 24065700
                                                  mmcbride@aatriallaw.com
                                                  ALAVI & ANAIPAKOS PLLC
                                                  609 Main Street, Suite 3200
                                                  Houston, Texas 77002
                                                  Telephone: (713) 751-2362
                                                  Facsimile: (713) 751-2341

                                                  Michael Heim
                                                  Texas Bar No. 09380923
                                                  mheim@hpcllp.com
                                                  Eric Enger
                                                  Texas Bar No. 24045833
                                                  eenger@hpcllp.com
                                                  R. Allan Bullwinkel
                                                  Texas Bar No. 24064327
                                                  abullwinkel@hpcllp.com
                                                  Alden Harris
                                                  Texas Bar No. 24083138

aharris@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
Lily R. Glick
Texas State Bar No. 24131333
lglick@hpcllp.com
Carlos I. Ruiz
Texas State Bar No. 24110614
cruiz@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
MILLER FAIR HENRY PLLC
1507 BILL OWENS PKWY
LONGVIEW, TEXAS 75604
TELEPHONE: (903) 757-6400
FACSIMILE:  (903) 757-2323

*Counsel for Plaintiff Iarnach Technologies Ltd.*

6

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record via email.

/s/ Carlos I. Ruiz
Carlos I. Ruiz

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned certifies that the parties conferred about this Motion on November 8, 2024. Iarnach was represented by Eric Enger (lead counsel for Iarnach), Alden Harris, Carlos Ruiz, and Andrea Fair (local counsel for Iarnach). Charter was represented by Saina Shamilov and Chris Larson. Charter's lead and local counsel were invited to participate in the meet-and-confer, but were not present. Charter declined to provide an alternative date when its lead and local counsel would be available. As described in the motion above, Iarnach and Charter are conclusively at an impasse, leaving an open issue for the Court to resolve.

/s/ Carlos I. Ruiz
Carlos I. Ruiz